Timothy A. Scott (SBN 215074)
Marcus S. Bourassa (SBN 316125)
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: tscott@mckenziescott.com
          mbourassa@mckenziescott.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL JOHNSTON,

     Plaintiff,

V.

COUNTY OF IMPERIAL; CITY OF
HOLTVILLE; JUSTIN BENAVIDEZ,
IN HIS INDIVIDUAL CAPACITY;
DEPUTY DOES 1-10, IN THEIR
INDIVIDUAL CAPACITIES,

     Defendants.

Case No.: '24CV1142 LL   SBC

**COMPLAINT FOR DAMAGES FOR:**
1. **42 U.S.C. § 1983: FOURTH AMENDMENT VIOLATIONS**
2. **42 U.S.C. § 1983: FOURTEENTH AMENDMENT VIOLATIONS**
3. **BATTERY**
4. **ASSAULT**
5. **NEGLIGENCE**
6. **FALSE IMPRISONMENT**
7. **VIOLATIONS OF THE BANE ACT**
8. **FAILURE TO SUMMON MEDICAL CARE**
9. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DAMAGES**

Comes now, Plaintiff MICHAEL JOHNSTON for his complaint against Defendants listed above and hereby alleges as follows:

**INTRODUCTION**

1.      On June 2, 2023, Imperial County Sheriff Deputies unexpectedly attacked Michael Johnston from behind, seriously injured him, and arrested him to conceal their wrongdoing.

2.      Mr. Johnston is a 69 year-old-man and pillar of his community in Holtville, California, where he grew up and has been an important community volunteer and leader for more than forty years.

3.      On June 2, 2023, Mr. Johnston was out for his daily morning walk around the neighborhood. As he passed Holtville High School, an Imperial County Sheriff's Deputy (Justin Benavidez) unexpectedly approached him and began rudely suggesting Mr. Johnston had committed some crime.

4.      In truth, at all relevant times that day, Mr. Johnston had done nothing wrong and could not reasonably have been suspected of any crime.

5.      Mr. Johnston initially answered questions, but as the Deputy became increasingly hostile and disrespectful, Mr. Johnston turned to walk away.

6.      Without warning, two Deputies grabbed Mr. Johnston's arms from behind. There was no legal basis for grabbing Mr. Johnson and, in the process of inexplicably handcuffing him, they violently yanked and injured his shoulder.

7.      The Deputies then held Mr. Johnston in their car and ignored his complaints that he had been injured, intentionally prevented an EMT from evaluating Mr. Johnston's injuries, and instead of taking him to a hospital, took him in cuffs to their station.

8.      There was no basis for deputies to detain Mr. Johnston, let alone violently arrest the nearly 70-year-old grandfather of six around the corner from his home, interfere with his medical care, and leave him with lasting injuries. This

suit seeks justice.

**CLAIM PROCESS, JURISDICTION, AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff assert causes of action for constitutional violations arising under 42 U.S.C. § 1983.

10.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     In accordance with the requirements of the California Tort Claims Act (Cal. Gov. Code §§ 810-996.6), Plaintiff filed a timely tort claim against the County of Imperial and its employees under Cal. Gov. Code § 900.4 on November 14, 2023.

12.     Defendants mailed Plaintiff a notice of rejection of claim on February 28, 2024.

13.     Plaintiff has satisfied the claim requirements of the California Tort Claims Act prior to filing suit here.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arise out of events and omissions occurring in the County of Imperial, which is situated in the Southern District of California.

**PARTIES**

15.     Plaintiff Michael Johnston is and was, at all times relevant to this Complaint, residing in Holtville, California.

16.     Mr. Johnston is a pillar of his community, a local leader, a volunteer, and coach for more than forty years.

17.     He graduated in 1974 from Holtville High School across from which the pertinent events in this action took place.

18.     In 2017, in recognition of his lifelong service to his community he was inducted into the school's Hall of Fame.

19.     Defendant County of Imperial (hereinafter "County") is a

3

governmental entity organized and existing under the laws of the State of California. The County employs and manages the Imperial County Sheriff's Office ("Sheriff").

20.    Defendant City of Holtville (hereinafter "City") is a governmental entity organized and existing under the laws of the State of California, which has contracted with the County for the Sheriff to provide the City with a police force.

21.    Justin Benavidez and Deputy Does 1 through 10 are, and were at all relevant times, Sheriff Deputies employed by the Sheriff, County, and City. They each performed the relevant acts within the course and scope of their employment and under the color and pretense of the laws of the State of California. They are sued in their individual capacity.

22.    The true names of Deputy Does 1-10, inclusive, are unknown to Plaintiff at this time, who therefore sue these defendants by such fictitious names. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## GENERAL ALLEGATIONS

23.    As set forth below, the County and City are each vicariously liable for damages under Plaintiff's state law claims, given Plaintiff's allegations that the people who committed the acts and omissions complained of herein were acting in the course and scope of their employment.

24.    The County and City are vicariously liable for the nonfeasance and malfeasance of the individual defendants pursuant to Cal. Govt. Code § 815.2 and Cal. Govt. Code § 815.6. The individual defendants are liable pursuant to Cal. Civ. Code § 820.

25.    Plaintiff makes no claim for punitive damages against the City or County.

/ / /

/ / /

COMPLAINT

### MR. JOHNSTON'S MORNING WALK

26.   June 2, 2023, Mr. Johnston set out from his home on his normal morning walk.

27.   As he walked by Freedom Academy School on 8th St. around 9am, in Holtville, he hoped to see if his granddaughter's car was there.

28.   He walked near a car with its windows all covered and thought he heard its engine running.

29.   Believing someone may have left an empty vehicle running by mistake, Mr. Johnston placed his hand on the hood to see if the engine was on.

30.    The car was running, but he could not see any occupants through the windows' covering.

31.   Concerned for the suspicious car, Mr. Johnston walked around to the passenger door and attempted to see inside.

32.   A man started yelling and cursing from the driver's side.

33.   Mr. Johnston went to the driver's side to apologize for any misunderstanding.

34.   The man jumped out again yelling profanity and pushed Mr. Johnston.

35.   Mr. Johnston observed a child in the obscured passenger seat, evidently sitting alone inside the car with the angry stranger.

36.   The man yelled at Mr. Johnston again to leave or he would call the cops.

37.   Mr. Johnston told him to go ahead and told the man his home address a few blocks away as he calmly walked away to avoid further confrontation with the inexplicably angry man.

38.   Within a couple minutes Mr. Johnston was in front of Holtville High School when a Sheriff Patrol car approached.

/ / /

/ / /

**DEPUTIES ABRUPTLY ATTACK MR. JOHNSTON FROM BEHIND.**

39.    Mr. Bendavidez and Deputy Doe 1 (together referred to herein as the "Assaultive Deputies") were inside the patrol car.

40.    Benavidez and Deputy Doe 1 arrived too quickly to have reasonably investigated Mr. Johnston's interaction with the angry man outside Freedom Academy School and they lacked any articulable suspicion Mr. Johnston had committed any crime.

41.    Benavidez exited the patrol car and rudely asked Mr. Johnston what had happened with words to the effect of "What's your story?"

42.    Mr. Johnston relayed the details of his interaction with the angry man who pushed him.

43.    When Mr. Johnston finished, Benavidez rudely told Mr. Johnston he was lying, or words to that effect.

44.    Mr. Johnston had told the truth.

45.    Mr. Johnston was unarmed.

46.    Mr. Johnston did not threaten the deputies.

47.    Mr. Johnston had done nothing wrong.

48.    Rather than respond to Benavidez's baseless accusation he was lying, Mr. Johnston turned to leave.

49.    Mr. Johnston reasonably perceived the interaction as a consensual encounter he could terminate at any time.

50.    Before using force on Mr. Johnston, the deputies said nothing to notify Mr. Johnston he could not leave.

51.    Before using force, neither Benavidez or Deputy Doe 1 told Mr. Johnston he could not leave, that he was being detained, or that he was under arrest.

52.    Nor did Mr. Johnston make a sudden or threatening movement in any respect while he turned to leave.

53.     There was no legitimate or reasonable need to surprise Mr. Johnston, an unarmed, outnumbered, and elderly man on foot.

54.     Nonetheless, without warning, Benavidez and Deputy Doe 1 grabbed Mr. Johnston's arms as he faced away from them.

55.     Benavidez and Deputy Doe 1 violently yanked Mr. Johnston's arms backwards and up behind his back.

56.     Mr. Johnston, immediately off balance from the force of both deputies violently yanking his arms, pleaded that he has bad knees and a bad back and not to throw him to the ground.

57.     There was no reasonable basis for the deputies to use any force whatsoever to detain Mr. Johnston, who a reasonable officer would have understood would obey a verbal command not to leave.

58.     Even if the deputies had a lawful basis to use any force or to reasonably believe some force was necessary, the deputies used force far in excess of that which any reasonable officer could think was necessary.

59.     Mr. Johnston did not resist arrest, detention, or being handcuffed.

60.     The deputies' use of violent and excessive force immediately injured Mr. Johnston's shoulder and put him in extreme pain.

61.     The deputies knew or should have known their actions would create a serious risk of injury and that Mr. Johnston would react to the pain by attempted to relieve the excruciating pain their excessive force continued to cause him as they handcuffed him.

62.     As the two deputies handcuffed Mr. Johnston, he was forced to bend over because of the angle at which the deputies attempted to raise his arms behind his back, such that any reasonable officer would understand Mr. Johnston's shoulder joints could not move in the manner the deputies were forcing them to move.

63.     Mr. Johnston's behavior and words both readily and immediately

COMPLAINT

conveyed that the deputies had injured his shoulder and were continuing to do so.

64.     Any reasonable deputy should have recognized Mr. Johnston as having been injured.

65.     Any reasonable deputy would have recognized Mr. Johnston was not willfully resisting arrest.

66.     Mr. Johnston also conveyed significant physical impairments in his back and knees.

67.     Nonetheless, the deputies persisted in unnecessarily yanking Mr. Johnston's arms upwards behind his back.

68.     On information and belief, the deputies were frustrated and took out their frustrations by intentionally causing Mr. Johnston additional pain and injury while knowing it was not necessary or reasonable.

69.     Benavidez and Deputy Doe 1 put Mr. Johnston into the backseat of the patrol car.

## DEPUTIES EXACERBATED MR. JOHNSTON'S SUFFERING WHILE MAKING A FALSE ARREST.

70.     Even though the backseat of the patrol car could be locked such that the occupant could not escape, the deputies left Mr. Johnston in handcuffs with his seatbelt on.

71.     Mr. Johnston expressly informed the deputies they had seriously injured him, including his shoulder.

72.     A paramedic or EMT arrived at the scene as well as multiple other deputies, including Doe Deputies 2 through 10.

73.     On information and belief, Doe Deputies 2 through 10 learned Mr. Johnston was seriously injured his shoulder either because they heard him persist in saying he was injured, because they heard Mr. Johnston express his excruciating pain, or other deputies informed them.

74.     Mr. Johnston informed the EMT that his shoulder was in excruciating

pain and the EMT conveyed to the deputies present that he could not assess or treat Mr. Johnston's injury unless the handcuffs were removed.

75. There was no reasonable penological or safety need to keep Mr. Johnston in handcuffs.

76. On information and belief, Benavidez and the Doe Deputies present understood there was no reasonable penological or safety need to keep Mr. Johnston in handcuffs.

77. Nonetheless, they refused Mr. Johnston's and the EMT's request to remove the handcuffs.

78. Nor did any deputy intervene with the others to ensure Mr. Johnston could receive basic and needed medical care and assessment by the EMT.

79. Because the deputies were uncooperative, the EMT left without being able to assess Mr. Johnston's injury.

80. While Mr. Johnston suffered detained in the backseat of the patrol car, Benavidez or one of the Doe Deputies spoke to his children and used the opportunity in a misleading effort to contrive of a lawful basis to civilly detain Mr. Johnston or otherwise arrest him.

81. Mr. Johnston's children did not say anything law enforcement could construe as supporting probable cause for an arrest, either criminal or civil.

82. Nor did the angry man provide any information to law enforcement which could afford probable cause for an arrest, either criminal or civil.

83. While they struggled to invent a basis for holding Mr. Johnston, they kept him handcuffed and suffering in the back seat for approximately one hour.

84. Thereafter, Benavidez and Deputy Doe 1 entered the patrol car, they tightened Mr. Johnston's seatbelt so that it caused further pain and began driving Mr. Johnston to the station.

85. At all times, the deputies ignored Mr. Johston's pain complaints about the seatbelt and handcuffing.

86.     Benavidez attempted to bait Mr. Johnston into an angry reaction or statements that might support arresting him.

87.     At no time did Mr. Johnston take any action or make any statements that a reasonable officer could believe afforded probable cause for an arrest.

88.     Meanwhile, while they drove, Mr. Johnston repeatedly asked for medical attention and informed them he needed to go to the hospital.

89.     Despite knowing there was a legitimate basis for Mr. Johnston's requests and that he urgently needed medical care, Benavidez and Deputy Doe 1 ignored his requests.

90.     At the station, the deputies finally removed Mr. Johnston's handcuffs.

91.     It was clear to anyone interacting with Mr. Johnston that he was in extreme pain and needed medical attention.

92.     Mr. Johnston repeatedly asked for medical attention and to see the nurse on call.

93.     On information and belief, the deputies on call ignored Mr. Johnston's requests or failed to act with reasonable diligence to summon medical attention.

94.     Mr. Johnston suffered for approximately an hour while he waited.

95.     Eventually, he was allowed to see a nurse who quickly determined that Mr. Johnston needed emergency medical care.

96.     Benavidez placed Mr. Johnston back in the patrol car.

97.     Benavidez knew he was taking Mr. Johnston for emergency medical attention and that Mr. Johnston was being released.

98.     Mr. Johnston was in evident pain and there was no penological basis for putting him in handcuffs again.

99.     Nonetheless, Benavidez unnecessarily placed Mr. Johnston in handcuffs.

100.    Placing him in handcuffs again exacerbated Mr. Johnston's suffering and Benavidez knew it would.

101.   On the way, Benavidez attempted to bait Mr. Johnston into making statements or taking actions that might justify an arrest.

102.   Mr. Johnston did not take the bait.

103.   The deputies dropped Mr. Johnston off at the hospital without an ID or insurance card.

104.   At the hospital Mr. Benavidez asked Mr. Johnston to sign an unidentified document.

105.   Mr. Johnston said he would not sign the unidentified document.

106.   Benavidez reacted by baselessly threatening to submit additional charges against Mr. Johnston.

107.   Mr. Johnston persisted in his refusal to sign.

108.   Deputies left him at the hospital.

109.   There was never probable cause to arrest Mr. Johnston, let alone detain him for any crime.

**DEFENDANT COUNTY OF IMPERIAL SENDS MR. JOHNSTON A FACIALLY DEFICIENT COMPLAINT AFTER THE STATUTE OF LIMITATIONS HAS EXPIRED.**

110.   On June 25, 2024, Defendant County of Imperial electronically filed a "Notice of Arraignment: Complaint" in Imperial County Superior Court, El Centro Department, Court # ECM013762.

111.   The complaint alleges misdemeanor offenses of vehicle tampering, resisting arrest, and battery, and that these crimes occurred on June 2, 2023.

112.   The complaint is in blatant retaliation for Mr. Johnston filing a tort claim.

113.   The complaint is not supported by probable cause.

114.   No witness swore out probable cause supporting the complaint.

115.   No judge made a finding of probable cause associated with the complaint.

116.   The complaint was not filed until after the statute of limitations had elapsed for the charges that it alleges.

117.   There was never any reasonable basis for deputies to use any force against Mr. Johnston, an elderly man with serious physical limitations who was never given any command before being violently tackled by deputies.

118.   As a direct and proximate result of defendants' unlawful seizure, prolonged detention, arrest, interference with Mr. Johnston's access to medicine, and use of force against Mr. Johnston, he suffered significant and lasting physical injuries, embarrassment, anxiety, stress, and pain.

119.   To the extent any of the violations, claims, or legal theories herein are partially overlapping, inconsistent, or contradictory, they are alleged in the alternative.

120.   In an effort to summarize, but without limiting the legal theories under which the foregoing facts will support plaintiff's claims, plaintiff offers the following summary of his causes of action for reference:

| Cause of Action Number | Cause of Action Type | Defendants |
|---|---|---|
| 1 | 42 U.S.C. § 1983 – Violations of the Fourth Amendment | Benavidez and Deputy Doe 1 |
| 2 | 42 U.S.C. § 1983 – Violations of the Fourteenth Amendment | Benavidez and Deputy Doe 1 |
| 3 | Battery | Benavidez, Deputy Doe 1, City, and County |
| 4 | Assault | Benavidez, Deputy Doe 1, City, and County |
| 5 | Negligence | Benavidez, Deputy |

| | | Doe 1, City, and County |
|---|---|---|
| 6 | False Imprisonment | Benavidez, All Deputy Does, City, and County |
| 7 | Violations of the Bane Act (Cal. Civ. Code § 52.1) | Benavidez, Deputy Doe 1, City, and County |
| 8 | Failure to Summon Medical Care (Cal. Govt. Code § 845.6) | Benavidez, Deputy Doe 1, City, and County |
| 9 | Intentional Infliction of Emotional Distress | Benavidez, Deputy Doe 1, City, and County |

# I.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Violations of the Fourth Amendment

### (Against Benavidez and Deputy Doe 1)

121.   Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

122.   Benavidez and Deputy Doe 1 each individually, and in conspiracy with one another, violated Mr. Johnston's Fourth Amendment rights.

123.   The Assaultive Deputies violated Mr. Johnston's Fourth Amendment rights to be free from excessive force by using *any* force against Mr. Johnston, by continuing to use *any* force for longer than necessary, by yanking and holding Mr. Johnston's arms behind his back, by pulling Mr. Johnston's arms, by applying handcuffs to Mr. Johnston, by continuing to hold Mr. Johnston's arms, by leaving him in handcuffs for longer than necessary, by holding him in custody at all and prolonging the same, by reapplying the handcuffs again after Mr. Johnston was seen by the nurse, and by *again* prolonging the time Mr. Johnston was in handcuffs the second time.

124.   The Assaultive Deputies also violated Mr. Johnston's Fourth Amendment rights to be free from an unreasonable search and seizure by detaining him, arresting him, making a false arrest, and prolonging his detention and arrest beyond anything reasonable or necessary.

125.   Each separate use of force and each moment during which Mr. Johnston was seized were violations of Mr. Johnston's Fourth Amendment rights separately and continuing throughout the Assaultive Deputies' interactions with Mr. Johnston until they released Mr. Johnston.

126.   Insofar as any force or seizure was permissible under the Fourth Amendment, which it was not, then each additional use of force and subsequent moment seized was excessive, unnecessary, unreasonable, and in violation of the Fourth Amendment.

127.   As a direct and foreseeable result of the Assaultive Deputies' violations of the Fourth Amendment, Mr. Johnston suffered physical pain, severe emotional distress, mental anguish, and grievous, lasting physical injuries. Mr. Johnston's daily life has been negatively impacted in the long term and he has incurred medical expenses to treat his grievous injuries.

128.   Mr. Johnston suffered special and general damages including pain and suffering, along with further damages in an amount to be shown according to proof at trial.

129.   In committing the violations of the Fourth Amendment, the Assaultive Deputies acted willfully, wantonly, and recklessly with malice, fraud, and oppression.

130.   Plaintiff also seeks an award of exemplary and punitive damages in an amount to be determined at the time of trial.

131.   Plaintiff further seeks attorney's fees and costs under this claim.

/ / /

/ / /

## II.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – Violations of the Fourteenth Amendment

## (Against Benavidez and Deputy Doe 1)

132. Plaintiff alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

133. The Assaultive Deputies' actions and omissions constituted objective and subjective deliberate indifference to Mr. Johnston's medical needs.

134. The Assaultive Deputies' actions and omissions violated the due process clause of the Fourteenth Amendment.

135. Owing to, at least, their own use of excessive force, visual and audible signs Mr. Johnston was seriously injured, Mr. Johnston's age and obvious vulnerability, Mr. Johnston's statements about his injuries and need to immediate medical care, and other evident signs the Assaultive Deputies knew from the moment they used force against Mr. Johnston until his release from their custody that he needed urgent medical care and that his injuries and pain would be exacerbated by any delay.

136. The Assaultive Deputies also knew there was no penological, investigative, or safety need or justification for delaying, impeding, or interfering with Mr. Johnston's urgent need for medical care.

137. Nonetheless, the Assaultive Deputies' made intentional decisions and omissions regarding the conditions of Mr. Johnston's detention, arrest, seizure, and confinement and the denial of adequate medical care, including but not limited to:

a. using and continuing to use unnecessary force against Mr. Johnston, notwithstanding his obvious pain, grievous injuries, and need for immediate medical interventions;

b. delaying medical care for Mr. Johnston's injuries;

c. interfering with the efforts of others to provide or obtain medical care;

15

d.  ignoring Mr. Johnston's pain, injuries, and Mr. Johnston's pleas for medical treatment and changes to the conditions of his confinement in their custody;

e.  refusing to remove the handcuffs they understood were exacerbating and causing further injury as well as obstructing necessary and urgent medical care;

f.  failing to take Mr. Johnston directly to the hospital from the site of his arrest;

g.  failing to assist medical personnel by removing unnecessary restraints;

h.  failing to monitor Mr. Johnston while he suffered in their care and needed urgent medical attention;

i.  failing take Mr. Johnston directly to the nursing staff at the jail; and

j.  failing to take appropriate measures to ensure Mr. Johnston received adequate and prompt medical care.

138.   The Assaultive Deputies' intentional decisions and omissions put Mr. Johnston at substantial risk of suffering serious harm.

139.   The Assaultive Deputies did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer or employee under the circumstances would have understood the high degree of risk involved—making the consequences of the Assaultive Deputies' conduct obvious.

140.   Defendants' conduct and omissions also constituted various violations of their own policies, training, and state and federal law.

141.   As a direct and foreseeable result of the Assaultive Deputies' violations of the Fourteenth Amendment, Mr. Johnston suffered physical pain, severe emotional distress, mental anguish, and grievous, lasting physical injuries. Mr. Johnston's daily life has been negatively impacted in the long term and he has incurred medical expenses to treat his grievous injuries.

142.   Mr. Johnston suffered special and general damages including pain and

suffering, along with further damages in an amount to be shown according to proof at trial.

143.    Defendants' deliberate indifference was an actual and proximate cause of Plaintiff's damages.

144.    In committing the violations of the Fourteenth Amendment, the Assaultive Deputies acted willfully, wantonly, and recklessly with malice, fraud, and oppression.

145.    Plaintiff also seeks an award of exemplary and punitive damages in an amount to be determined at the time of trial.

146.    Plaintiff further seeks attorney's fees and costs under this claim.

## III.

## THIRD CAUSE OF ACTION

## Battery

## (Against Benavidez, Deputy Doe 1, City, and County)

147.    Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

148.    The Assaultive Deputies used unreasonable and excessive force on Mr. Johnston.

149.    Their use of force on Mr. Johnston was tortious.

150.    The Assaultive Deputies repeatedly touched and applied force to Mr. Johnston directly and with tools like handcuffs by, for example, grabbing his arms, manipulating his arms behind his back, holding them to apply handcuffs, and directing him where to move.

151.    Each separate use of force and touching of Mr. Johnston was itself a battery.

152.    Mr. Johnston did not, at any time, consent to the Assaultive Deputies using any force on him.

153.    As a direct and foreseeable result of Assaultive Deputies' use of force,

Mr. Johnston suffered grievous mental and physical injuries.

154.   Mr. Johnston suffered general and special damages, along with further damages in an amount to be shown according to proof at the time of trial.

155.   These defendants' conduct was a substantial factor in causing Mr. Johnston's injuries.

156.   Because the Assaultive Deputies acted in the scope of their employment, the City and County are each vicariously liable for the harm proximately caused by their conduct, including pursuant to Cal. Govt. Code § 815.2.

157.   The Assaultive Deputies acted with malice, fraud, and oppression in using force as they did and committing multiple batteries upon Mr. Johnston. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

## IV.

## FOURTH CAUSE OF ACTION

### Assault

### (Against Benavidez, Deputy Doe 1, City, and County)

158.   Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

159.   The Assaultive Deputies threatened to use force on Mr. Johnston in a manner which was tortious.

160.   The Assaultive Deputies threatened to exert additional unnecessary force separate from and in addition to the force they actually applied.

161.   The Assaultive Deputies, for example, threatened to extend Mr. Johnston's arms farther upward behind his back, to continue yanking Mr. Johnston's body, to recommence forcefully manipulating his body, and to prolong his suffering in handcuffs or otherwise physically harm him anew.

162.   The Assaultive Deputies' threats constituted a threat to touch Mr.

Johnston in a harmful or offensive manner.

163.   It reasonably appeared to Mr. Johnston that the Assaultive Deputies were about to carry out the threat and attempted to carry out that threat.

164.   The Assaultive Deputies acted intending to cause harmful or offensive contact with Mr. Johnston.

165.   Mr. Johnston did not consent to the Assaultive Deputies' threatened harmful or offensive contact.

166.   As a direct and foreseeable result of Assaultive Deputies' threatened use of force and harmful or offensive conduct, Mr. Johnston suffered grievous mental and physical injuries.

167.   The Assaultive Deputies' assaultive conduct was a substantial factor in causing Mr. Johnston's injuries.

168.   Because the Assaultive Deputies acted in the scope of their employment, the City and County are each vicariously liable for the harm proximately caused by their conduct, including pursuant to Cal. Govt. Code § 815.2.

169.   In threatening the acts described herein, the Assaultive Deputies acted with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

## V.

## FIFTH CAUSE OF ACTION

## Negligence

## (Against Benavidez, Deputy Doe 1, City, and County)

170.   Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

171.   City and County employees who interacted with Mr. Johnston or otherwise had direct or indirect control over his experience on the day he was attacked by the Assaultive Deputies (hereinafter the "Sheriff Employees"),

including, but not limited to Benavidez and all the Deputy Does, had a duty to use reasonable care to prevent harm or injury to Mr. Johnston.

172.   The Sheriff Employees also owed a duty of care to Mr. Johnston by virtue of his having been taking into custody.

173.   The Sheriff Employees' duties include using appropriate strategies, using appropriate tactics, giving appropriate commands, giving warnings, ensuring their tactics do not create unnecessary risks of injury, complying with the law, not using unnecessary force, not detaining citizens without a lawful basis, ceasing to use force and ending detentions when they are unreasonable, attending to the basic needs of those in their custody, taking reasonable steps to safeguard and protect those in their custody; listening to and adapting their tactics to accommodate and account for the age, disabilities, and injuries experienced by those in their custody, not using any force unless necessary, and to intervene when they see important errors, mistakes, or misunderstandings that cause continuing injuries to those in their care.

174.   The Assaultive Deputies in addition to other Sheriff Employees acting in the course of their employment for the City and County breached their duties of care to Mr. Johnston such that they were negligent and reckless.

175.   The Assaultive Deputies in addition to other Sheriff Employees acts and omissions in violation of their duties included but are not limited to:

a.  using any force against Mr. Johnston;

b.  seizing Mr. Johnston;

c.  detaining Mr. Johnston;

d.  arresting Mr. Johnston;

e.  handcuffing Mr. Johnston;

f.  continuing to do the foregoing for longer than necessary;

g.  failing to intervene to stop others from causing unnecessary harm to Mr. Johnston;

h. failing to reasonably investigate any allegations against Mr. Johnston before detaining or using force against him;

i. failing to warn Mr. Johnston they would use force;

j. failing to give Mr. Johnston clear commands;

k. failing to consider information they knew about Mr. Johnston's body, injuries, and innocence of any crime;

l. failing to adapt their tactics to reasonably accommodate Mr. Johnston's circumstances;

m. failing to properly assess his injuries or summon medical aid to attend to his injuries;

n. impeding, delaying, or interrupting attempts to provide Mr. Johnston with medical care; and

o. reapplying handcuffs.

176. As a direct and proximate result of defendants' breaches of the Assaultive Deputies' and other Sheriff Employees' duties, Mr. Johnston suffered severe injury, pain, suffering, loss of mobility, disability, emotional distress, mental anguish, fear, lack of sleep, illness, stress, and anxiety.

177. As a direct, foreseeable, and proximate result of the breaches of their duties, Mr. Johnston has suffered general and special damages, as well as having lasting disabilities, in an amount to be proven at trial.

178. Because these acts occurred in the scope of the Assaultive Deputies' and other Sheriff Employees' employment, the City and County are vicariously liable for the harm proximately caused by their conduct, including pursuant to California Government Code § 815.2.

179. In breaching their duties to Mr. Johnston, the Assaultive Deputies acted with malice fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

180. On information and belief, in committing and conspiring to commit

the acts described herein, the defendants acted with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

## VI.

## SIXTH CAUSE OF ACTION

### False Imprisonment

### (Against Benavidez, All Deputy Does, City, and County)

181.   Plaintiff realleges and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

182.   Benavidez and the Deputy Does individually, and in conspiracy with one another, violated Mr. Johnston's personal liberty by placing him under de facto arrest, by detaining him, my arresting him, by holding him in handcuffs, by locking him in a vehicle, by impliedly ordering him upon threat of violence not to leave their custody without permission, by locking him in spaces, and by otherwise preventing Mr. Johnston from departing of his own free will.

183.   Benavidez and the Deputy Does' restraint upon plaintiff was a nonconsensual, intentional confinement, without lawful privilege.

184.   Benavidez and the Deputy Does accomplished their restraint of plaintiff by violence, threats, and menace.

185.   Upon information and belief, Benavidez and each of the Deputy Does was either personally involved and/or aided and abetted in the violation of Mr. Johnston's right to be free from confinement as well as his constitutional rights. Each knew that the other individual defendants were committing unlawful actions against Mr. Johnston as they planned to and did seize and unlawfully retain Mr. Johnston in their custody.

186.   Each knowingly gave express or implied substantial assistance and encouragement to the other individual defendants such that each individual defendant's conduct was a substantial fact in causing harm to Plaintiff.

187.   As a direct, foreseeable, and proximate result of the aforementioned acts and/or omissions of defendants, Plaintiff sustained pain, suffering, and other injuries.

188.   Because these acts occurred in the scope of the individual defendants' employment, the City and County are vicariously liable for the harm proximately caused by their conduct, including pursuant to California Government Code § 815.2.

189.   On information and belief, while committing or conspiring to commit the false imprisonment described herein, the individual defendants acted with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

## VII.
## SEVENTH CAUSE OF ACTION
## Bane Act Violation
## (Against Benavidez, Deputy Doe 1, City, and County)

190.   Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

191.   When the Assaulting Deputies used excessive force and unlawfully seized Mr. Johnston by force as described herein and especially in section I., they interfered with Mr. Johnston's Fourth Amendment rights to be free from excessive force as well as unreasonable searches and seizures.

192.   When the Assaulting Deputies were deliberately indifferent to Mr. Johnston's serious medical needs as described herein and especially in section II, they interfered with Mr. Johnston's Fourteenth Amendment rights to medical care while in the custody of law enforcement.

193.   With respect to all of the violations of Mr. Johnston's constitutional rights described herein, the Assaultive Deputies acted intentionally to interfere with Mr. Johnston's rights by threat, intimidation, and coercion both inherent to the

violations and separate from the force and threats inherent in the violations.

194.   For example, defendants employed threats, intimidation, and coercion to interfere with Mr. Johnston's right to medical care in their custody by refusing to remove painful handcuffs even when requested to do so in the presence of medical personnel who needed them removed to assess Mr. Johnston's injuries. Defendants further employed threats, intimidation, and coercion by intentionally holding Mr. Johnston in more painful positions while he pleaded for medical attention, reapplying handcuffs they knew would cause further injury even after they understood Mr. Johnston would be released at the hospital for urgent medical care, and by threatening additional charges without any basis for doing so.

195.   The Assaultive Deputies acted violently against Mr. Johnston to prevent him from exercising his rights. In doing so, they intended to deprive Mr. Johnston of the enjoyment of his rights.

196.   As a direct and foreseeable result of the Assaultive Deputies' tortious conduct, Mr. Johnston suffered grievous mental and physical injuries.

197.   Mr. Johnston suffered general and special damages, along with further damages in an amount to be shown according to proof at the time of trial.

198.   The Assaultive Deputies' violations of the Bane Act were a substantial factor in causing Mr. Johnston's harm and injuries.

199.   Because these individual defendants acted in the scope of their employment, the County and City are vicariously liable for the harm proximately caused by their conduct, including pursuant to California Government Code § 815.2.

200.   In committing the acts described herein, the Assaultive Deputies acted with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

201.   Plaintiff further seeks attorney's fees and costs under this claim.

/ / /

# VIII.

## EIGHTH CAUSE OF ACTION

### Failure to Summon Medical Care (Cal. Govt. Code § 845.6)

### (Against Benavidez, Deputy Doe 1, City, and County)

202.   Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

203.   The Assaultive Defendants knew and had reason to know Mr. Johnston required medical care.

204.   The Assaultive Defendants knew and had reason to know Mr. Johnston's need for medical care was immediate and serious.

205.   The Assaultive Defendants failed to take reasonable actions to summon medical care.

206.   Even when medical personnel responded to the scene of Mr. Johnston's arrest, the Assaultive Deputies knowingly prevented them from being able to adequately assess whether Mr. Johnston needed any medical care.

207.   The Assaultive Deputies knew medical personnel at the scene of their attack on Mr. Johnston were not able to assess Mr. Johnston's actual injuries and his need for immediate medical care.

208.   Still the Assaultive Deputies failed to take reasonable actions to summon medical care they knew Mr. Johnston needed and took steps to actively prevent him from receiving medical care in a prompt manner.

209.   Pursuant to Cal. Gov. Code §§ 845.6 and 815.2, the City and County are liable because the Assaultive Deputies were at all times acting within the scope of their employment.

210.   The Assaultive Deputies' conduct was an actual and proximate cause of Mr. Johnston's injuries, which were direct and foreseeable results of Defendants' conduct.

211.   In committing the acts and omissions described herein, the Assaultive

Deputies acted with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

## IX.

## NINTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against Benavidez, Deputy Doe 1, City, and County)

212. Plaintiff realleges and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

213. The Assaultive Deputies acted intentionally, including in committing the following outrageous acts:

a. violently attacking a citizen on his morning walk without any justification or warning;

b. ignoring the elderly man's pleas and cries of pain while yanking his harms back and upwards in a way they knew he could not move without grievous injury;

c. handcuffing and keeping Mr. Johnston unnecessarily in handcuffs as a way to cause him pain and for no other penological or safety reason;

d. intentionally interfering with medical attendants who might have alleviated his obvious suffering;

e. knowingly attempting to conjure a false factual and legal basis for the arrest as a way to protect themselves from responsibility for the harm they knew they had caused and continued to cause;

f. knowingly abusing their authority and uniform to cause an elderly community leader to suffer significant pain and injury; and

g. knowingly doing the foregoing acts in front of an audience of Mr. Johnston's community and neighborhood knowing it would cause him further emotional distress to suffer and be falsely arrested in front of

dozens of his neighbors, family, and friends.

214.   The Assaultive Deputies acted in reckless disregard to or with the deliberate objective of causing plaintiff severe emotional distress.

215.   As a direct and proximate result of the aforementioned acts or omissions of the individual defendants, Plaintiff suffered injuries including pain, suffering, and severe emotional distress.

216.   Because these individual defendants acted in the scope of their employment, the County and City are vicariously liable for the harm proximately caused by their conduct, including pursuant to California Government Code § 815.2.

217.   In committing the acts described herein, the Assaultive Deputies acted with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against defendants as follows:

        a.     General and compensatory damages in an amount according to proof;

        b.     Punitive and exemplary damages against all individual defendants;

        c.     Civil penalties as provided by law;

        d.     Attorney fees pursuant to Cal. Civil Code § 52.1(b) and Cal. Civil Code § 52;

        e.     Costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988;

        f.     All other damages, penalties, costs, and fees as allowed by Cal. Civ. Proc. §§ 377.20, 377.60, 1021.5

        g.     Costs;

        h.     And for all other and further relief as the Court may deem proper.

DATE: July 2, 2024             MCKENZIE SCOTT, PC

                   By:  */s/ Timothy A. Scott*
                        TIMOTHY A. SCOTT
                        MARCUS S. BOURASSA
                        Attorneys for Plaintiff

COMPLAINT